## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| **Simian Y. Simmons,** ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:22cv91 (RDA/IDD) |
| ) | |
| **Deputy Boyle B.A. #336,** *et al.*, ) | |
| Defendants. ) | |

### MEMORANDUM OPINION

Simian Y. Simmons ("Simmons" or "Plaintiff"), a Virginia inmate proceeding *pro se*, filed a civil rights action under 42 U.S.C. § 1983, alleging two Stafford County Virginia Sheriff's Department Officers, Deputy Boyle and Sargent Daniel Purcell, violated his Fourth Amendment right against unreasonable search and seizure during a traffic stop on January 9, 2020, as well as his Eighth Amendment right not to be subject to cruel and unusual punishment. [Dkt. No. 1 at 4-6]. On February 8, 2023, the Court denied the defendants motion to dismiss [Dkt. No. 32], and thereafter, on March 10, 2023, each defendant filed a motion for summary judgment, supported by a brief with exhibits and affidavits. [Dkt. Nos. 36-37, 38-39]. Simmons was advised of his right and opportunity to file responsive materials pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). [Dkt. Nos. 36, 38, 40]. On March 28, 2023, Simmons sought an extension of time to file a response [Dkt. Nos. 42, 46], which the Court granted. His response was due on or before May 1, 2023. [Dkt. No. 47]. Simmons filed two responses to the motion for summary judgment: Simmons "Opposing, Objecting to" each defendant's motion for summary judgment; and a "Memorandum of Law in Opposition to" the defendants' motions for summary judgment. [Dkt. No. 48, 49]. The defendants have timely filed a response. [Dkt. No. 50]. Accordingly, the motion

for summary judgment is now ripe for disposition.[1] For the reasons that follow, the defendants' Motions for Summary Judgment must be granted.

## I. Undisputed Facts

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendants, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, set forth a statement of material facts that defendants contend are undisputed. Plaintiff has not complied with his obligations under those Rules by submitting statements of undisputed and disputed facts. Accordingly, Plaintiff has failed to rebut any of the facts set forth in Defendants' motions for summary judgment, *Gholson v. Murray*, 953 F. Supp. 709, 714 (E.D. Va. 1997), and the Court accepts Defendants' statement of facts as true. *See Integrated Direct Mktg., LLC v. May*, 129 F. Supp. 3d 336, 345 (E.D. Va. 2015) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine facts in opposition to the motion.") (quoting E.D. Va. Loc. Civ. R. 56(B)), *aff'd*, 690 F. App'x 822 (4th Cir. 2017); *see also JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 705, 707 (E.D. Va. 2007) (movant's statement of undisputed facts is deemed admitted where nonmovant's response fails to "identify with any specificity which facts, if any, were disputed") (citing E.D. Va. Loc. Civ. R. 56(B)).[2]

---

[1] On May 18, 2023, Simmons filed a pleading seeking to amend his complaint to allege unrelated claims, [Dkt. No. 51], which was denied by an order dated June 2, 2023. [Dkt. No. 52]. As noted in the June 2, 2023 order, the May 18, 2023 pleading seeks to raise new claims that are barred by the statute of limitations; and also complains about the disposition of the personal property seized on January 9, 2020, which involves persons that are not a party to this civil action, and asks this Court to interfere with ongoing state court proceedings related to the seized property.

[2] The record of admissible evidence includes defendant's unobjected to exhibits. [Dkt. Nos. 43, 43-1, 43-2]. Plaintiff did not swear to the allegations in his complaint. *See Goodman v. Diggs*, 986 F.3d 493, 498-99 (4th Cir. 2021) (verified pleadings are the "equivalent of an affidavit"). His response to the motion to dismiss [Dkt. No. 22] has a notary's stamp, but it was not sworn to under oath and it does not satisfy the requirements of 28 U.S.C. § 1746. At best, it is acknowledged, which is not sworn to, and is not an affidavit. *See Bradley v. U.S.*, 218 F.2d 657, 659 n.1 (9th Cir. 1954) (document acknowledged ..., but not sworn to, was not an affidavit), *rev'd on other grounds*, 348 U.S. 967

Accordingly, the following statement of uncontested facts is derived from a review of defendants' statements of undisputed facts, and the record.

1. On January 9, 2020, Detective Chiappini was trying to locate a suspect that was possibly trafficking narcotics. [Dkt. Nos. 39-3 at ¶ 3; 39-4 at ¶ 3]. Detective Chiappini informed Dep. Boyle ("Boyle") and 1st Sgt. Purcell ("Purcell") of Simmons address, that Simmons had exited his residence and was driving a Cadillac sedan that Simmons had been known to drive, and the location of his vehicle. [Dkt. Nos. 39-3 at ¶ 3; 39-4 at ¶ 4].

2. Purcell and Boyle were both informed that Simmons was known to distribute illegal narcotics and was also known to carry or conceal narcotics between his legs toward his buttocks while transporting the narcotics. [Dkt. Nos. 39-3 at ¶ 3; 39-4 at ¶ 4].

3. Purcell had previously arrested Simmons for the offense of driving after his license had been revoked (habitual, felony) and DUI, and Boyle was informed that Simmons had multiple convictions for driving after having been declared a habitually revoked offender. [Dkt. Nos. 39-3 at ¶ 3; 39-4 at ¶ 3-4].

4. Purcell and Boyle both had information that Simmons was a revoked habitual offender with multiple convictions, and both knew because of this that any incident in which Simmons was driving was a felony. Purcell checked the DMV records and confirmed that Simmons license was still revoked. [Dkt. Nos. 39-3 at ¶¶ 3-4; 39-4 at ¶¶ 3-4].

5. At approximately 7:35 p.m., Boyle observed the Cadillac that Simmons was known to drive and was able to confirm as he followed the Cadillac that Simmons was the driver because

---

(1955); *Miller Studio, Inc. v. Pac. Imp. Co.*, 39 F.R.D. 62, 65 (S.D.N.Y. 1965) (Rule 56(e) "demands affidavits" and the "paper, since it is not sworn to, is not an affidavit."). *See also In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013) (holding "that 28 U.S.C. § 1746 requires that a certification of the truth of a matter be expressly made under penalty of perjury"). Plaintiff also did swear to the allegations in his two responses to the motions for summary judgment. [Dkt. Nos. 48, 49]. The May 18, 2023 pleading was sworn, but it has no relevance to the January 9, 2020 strip search.

Boyle had researched known photographs of Simmons before he began to follow the Cadillac. [Dkt. Nos. 39-1 at 11; 39-3 at ¶ 3].

6. Boyle activated his emergency lights. However, Simmons slowed to a "slow roll" but did not come to a stop. Simmons continued to drive through the neighborhood, disregarded Boyle's emergency lights, drove through stop signs, attempted a left turn when Boyle pulled up next to him, then stopped, backed up, and continued driving. Simmons continued to drive in disregard of Boyle's emergency lights but was eventually stopped at 7:39 p.m. when Purcell executed a "rolling roadblock" by pulling in front of Simmons and stopping while Boyle positioned and stopped his vehicle at the rear of the Cadillac to prevent Simmons from backing up. [Dkt. Nos. 39-1 at 11-12; 39-2 at 2; 39-4 at ¶ 4].

7. Purcell identified Simmons based on his previous interactions with him. [Dkt. No. 39-4 at ¶ 3]. Boyle approached Simmons' vehicle at 7:39 p.m. and removed Simmons from the vehicle, placed him in handcuffs, and took him to the rear of the vehicle. [Dkt. No. 39-1 at 12].

8. Purcell stayed with Plaintiff at the rear of the Cadillac while Boyle re-positioned his vehicle to allow the camera in his vehicle to "tape" the search incident to arrest of Simmons' person. [Dkt. Nos. 39-1 at 12; 39-3 at ¶ 4; 39-4 at ¶ 5; 39-5]. The vehicles were stopped in front of 39 Settlers Way, Stafford, Virginia. [Dkt. No. 1 at 4].

9. During the search, Boyle was on one side of Simmons, Purcell was on the other side of Simmons, and Boyle's vehicle was behind them. [Dkt. Nos. 39-3 at ¶ 6; 39-5 at 2].

10. Boyle put on gloves before the initial pat-down search of the outside of Simmons' clothing, and Boyle felt something hard between Simmons legs and toward his buttocks, which he did not believe was part of Simmons' anatomy and that the object was inanimate in nature. [Dkt.

Nos. 39-3 at ¶ 5; 39-4 at ¶ 7; 39-5].[3] The search began at approximately 7:41 p.m. [Dkt. No. 39-5 at 1].

11. When asked what this item was, Simmons stated that he had nothing. [Dkt. Nos. 39-3 at ¶ 5; 39-4 at ¶ 7].

12. Boyle then quickly pulled Simmons' waistline back and saw a purple object between Simmons "butt cheeks." Boyle removed the hard-purple object (in approximately less than 2-3 seconds). As Boyle was removing the drugs from Simmons' buttocks, Simmons squirmed, which caused his pants to fall no more than a few inches from his waistline. Simmons pants were "immediately" pulled up. [Dkt. Nos. 39-1 at 12; 39-3 at ¶ 5; 39-4 at ¶ 8; 39-5 at 6-12].[4]

13. The area searched by Boyle (Simmons' buttocks) is a common place for drug dealers to conceal weapons or contraband. [Dkt. Nos. 39-3 at ¶ 5; 39-4 at ¶ 9].

14. Boyle did not search Simmons' anal cavity during the search; the object was outside of Simmons body between his buttocks. [Dkt. Nos. 39-4 at ¶ 7; 39-5]. Boyle "felt a hard-lump protruding from between [Simmons'] butt cheeks… pulled the rear of [Simmons'] waistline away and was able to visually see a purple object between [Simmons'] butt cheeks and [Boyle] informed … Purcell [Simmons] had drugs there." [Dkt. Nos. 39-1 at 12; 39-3 at ¶ 5].

15. The purple object was approximately the size of a lacrosse ball. [Dkt. Nos. 39-3 at ¶ 7].[5]

---

[3] In addition to the information provided by Detective Chiappini that Simmons was known to carry or conceal narcotics between his legs toward his buttocks while transporting them, based upon his training and experience, Boyle knew that drug dealers often concealed drugs in their buttocks. [Dkt. Nos. 39-3 at ¶ 3; 39-4 at ¶ 4].

[4] The time stamps on the photographs indicate that from the time Boyle first started to pull at the waist band until he retrieved the item and released the waistband was approximately six seconds (7:41:06 through 7:41:12 p.m.). [Dkt. No. 39-5 at 6-12].

[5] A regulation lacrosse ball is about 2½ inches in diameter. *See* National Operation Committee on Standards for Athletic Equipment, https://nocsae.org/standards/standards-matrix/#/all/performance/current (Standards Matrix, "ND049,") last visited June 6, 2023) (standard circumference is between 7.75 and 8.00 inches). The diameter is

16. During the search, Boyle did not lift Simmons off of the ground, and did not grope him or grab his skin. [Dkt. Nos. 39-3 at ¶ 5; 39-5 at ¶ 7].

17. Purcell, who was holding Simmons during the search, did not observe Simmons' genitalia or any other part of his anatomy under his pants being exposed during the search. [Dkt. Nos. 39-4 at ¶ 8; 39-5].

18. During the search, Purcell did not observe any citizens outside and did not observe any vehicles passing. [Dkt. Nos. 39-4 at ¶ 8; 39-5].

19. During the search, Boyle did not see anyone outside; he saw no civilian traffic passing that could see the officers and Simmons; and there were no streetlights or sidewalks in the area. [Dkt. Nos. 39-3 at ¶ 6; 39-5].

20. During the search, only Boyle and Purcell were present; no other police were present. [Dkt. Nos. 39-1 through 5].

21. The search began at approximately 7:41 p.m., and it was dark at that time [Dkt. Nos. 39-3 at ¶ 6; 39-5].

22. There were no sidewalks or streetlights in the area, and the single-family homes in the area were set away from the road. [Dkt. Nos. 39-3 at ¶ 6; 39-5].

23. The neighborhood where the search took place was composed of single-family homes on lots where the homes were set back away from the road. [Dkt. Nos. 39-3 at ¶ 6].

24. On January 9, 2020, at the location of the incident, the sun set at approximately 5:06 p.m.[6]

---

determined by using the formula C/ π = diameter, where "C" stands for circumference and "π" stands for 3.14159. *See* https://www.sensorsone.com/circle-circumference-to-diameter-calculator/ (last viewed June 6, 2023).

[6] *See Astronomical Applications Department, U.S. Naval Observatory* https://aa.usno.navy.mil/data/index (Data Services Tab, Complete Sun and Moon Data for One Day, search "N 38.4634°, W 77.4280," the approximate location of the stop in Stafford County, Virginia). *See Pryor v. City of Chicago*, No. 07 C 2479, 2010 WL 431470, at *2 & n. 1 (N.D. Ill. Feb. 1, 2010) (court took judicial notice of time of sunset, according to NOAA Sunset Calculator);

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), a motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The essence of the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to the jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. After that required showing, however, the party opposing the motion must set forth specific facts, supported by evidence, showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. The opposing party may not rest on the mere pleadings. *Celotex*, 477 U.S. at 324.

"In determining whether summary judgment is appropriate, courts determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law.'" *Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 769 (4th Cir. 2003). "It is also true that 'the mere existence of some disputed facts does not require that a case go to trial', rather, '[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict.'" *Poole v. Pass*, 351 F.Supp.2d 473, 478 (E.D. Va. 2005) (quoting *Thompson Everett, Inc. v. Nat'l Cable*

---

*Hendrix v. Sharp*, No. 3:18-cv-84, 2021 WL 727034, *6 (D. Nev. Jan. 13, 2021) (same); *Corley v. Long-Lewis, Inc.*, 688 F. Supp. 2d 1315, 1323 (N.D. Ala. 2010) ("Courts may take judicial notice of such scientific, historical, and geographical facts as the boundaries of a state or the time of sunset.") (citing *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir.1997)).

*Adver., LP*, 57 F.3d 1317, 1323 (4th Cir. 1995)). A mere scintilla of proof will not prevent the entry of summary judgment. *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).

### III. Analysis

The defendants argue that they are entitled to summary judgment because the search by defendant Boyle did not violate Plaintiff's constitutional rights because the search was reasonable, and justified in order to discover and preserve evidence. Defendant Purcell also argues he is entitled to summary judgment because he was not directly involved in the search. [Dkt. No. 39 at 12].

"An officer may search the person of an arrestee, and the area within the arrestee's immediate control, without a search warrant based on the need to disarm the arrestee and to discover evidence. However … [a] search[] incident to an arrest, must be reasonable to withstand Fourth Amendment scrutiny." *United States v. Edwards*, 666 F.3d 877, 882-883 (4th Cir. 2011) (citing *Illinois v. Lafayette*, 462 U.S. 640, 644-45 (1983), *Amaechi v. West*, 237 F.3d 356, 363 (4th Cir. 2001)). In *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), the Supreme Court instructed that this reasonableness analysis requires a "balancing of the need for the particular search against the invasion of the personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* at 559. The Fourth Circuit employs the *Wolfish* test "to determine the reasonableness of a broad range of sexually invasive searches," including strip searches," *Edwards*, 666 F.3d at 883, and assesses a strip search's reasonableness "by considering 1) the searching official's justification for conducting it, 2) the place in which the search was

8

conducted, 3) the scope of the particular intrusion, and 4) the manner in which the search was conducted." *United States v. Meyers*, 760 F. App'x 181, 186 (4th Cir. 2019) (citation omitted).[7]

In the instant case, defendants Boyle and Purcell were justified in stopping Simmons because he had been observed driving after having had his license revoked, and based upon his driving history, the offense was a felony. Simmons has not disputed the officers had probable cause to stop him. Indeed, Simmons did not stop of his own volition but was forced to stop when the officers executed a rolling roadblock because Simmons disregarded Boyle's flashing lights. Likewise, Simmons has not challenged the search incident to arrest. His complaint asserts that the pulling back of his waistband and the removal of the purple bundle from between his buttocks was a "strip search" that violated his constitutional rights.

The vehicles were stopped in front of 39 Settlers Way, Stafford, Virginia, and the search incident to arrest took place at the rear of the Cadillac with Boyle on one side and Purcell on the other. The search began at approximately 7:41 p.m., and it was dark with the sun having set over two hours before the search. The area was a neighborhood with homes set back from the road, there were no sidewalks or streetlights, and the only persons present or who could potentially observe the search were Boyle and Purcell. Purcell avers that he was holding Simmons during the search and he did not observe any of Simmons' genitalia or any other part of his anatomy under his pants. Boyle and Purcell also aver that they did not observe any citizens or vehicles passing during the short time span of the strip search portion of the search.

Not every strip search need be in private, but whether others could see or actually did observe the search is part of the consideration of its reasonableness. *Edwards*, 666 F.3d at 883; *see*

---

[7] In *Edwards* the government failed to raise an "inevitable discovery" argument, and the Fourth Circuit therefore did not address that issue. 666 F.3d at 887.

9

also *U.S. v. Meyer*s, 2017 WL 3310971 (D. S.C. Aug. 3, 2017) (finding "strip" search in a parking lot was reasonable as officers were surrounding the defendant and there was no evidence anyone in fact saw defendant exposed other than the three officers). As noted, the officers had the proper justification to stop Simmons based upon his observed felonious conduct and were also justified in conducting a pat-down search incident to arrest. During that pat-down, Boyle identified a hard object that was not part of Simmons anatomy, which ultimately became in plain view in the area of Simmons' buttocks. When asked about the item, Simmons tried to squirm away and stated that "he had nothing." [Dkt. Nos. 39-3 at ¶ 5; 39-4 at ¶ 7]. In the span of approximately six seconds, Boyle pulled back the waistband on Simmons pants, and, with the aid of a flashlight, identified a purple object protruding from between Simmons' "butt cheeks" and then removed it. The undisputed facts in this case are strikingly similar to the search conducted in *United States v. Daniels*, 323 F. App'x 201 (4ht Cir. 2009), in which the district court's denial of the motion to suppress was affirmed.

> At the suppression hearing Detective Kimbell testified that he physically pulled the waistband of defendant's sweatpants outward approximately three inches and looked straight down into his underwear with a flashlight and that he did so without exposing Daniels to the public. Detective Robson testified that he observed Det. Kimbell "when he was pulling out Daniels' pants, and looking down into the crotch area" and added that Det. Kimbell "pulled [Mr. Daniels' pants] down, lifted them in front, looked down and found the heroin under his scrotum area." Robson's testimony suggests the possibility that Daniels' genital area may have been momentarily exposed. However, even assuming that this occurred, there is no proof that Daniels was exposed to anyone other than Det. Kimbell. The search occurred at night and away from Albemarle Road and a phalanx of male officers surrounded Daniels as he was being searched. These facts indicate that whatever intrusion occurred was limited in scope.
>
> \*\*\*
>
> During their search of Daniels' person, the officers first searched the outer pockets of Daniels' clothes. When they initially did not find any weapons or drugs, they then proceeded to look in his underwear, where they found four bundles of heroin.
>
> \*\*\*
>
> The search of Daniels' underwear was not gratuitous in light of the officer's

10

> reasonable suspicion that illegal contraband was concealed in his pants. There is no clear showing that Daniels was exposed to the public and we find that the police officers acted reasonably under the circumstances.

*Id.* at 207-08 (record cites omitted).[8] Even assuming some slight momentary exposure and contact by Boyle, some physical contact is permissible, and indeed unavoidable, when police reach into a suspect's pants to remove drugs the suspect has chosen to hide there. *See, e.g., United States v. Williams*, 209 F.3d 940, 944 (7th Cir. 2000) (upholding the removal of crack cocaine from area of suspect's buttocks);[9] *United States v. Meyers*, 760 F. App'x 181, 187 (4th Cir. 2019) (the court affirmed the denial of the suppression motion for the drugs and firearm retrieved form a strip search finding the officer was justified in conducting the search after finding a hard object during a pat-down search; that, although the search occurred in a public area, the officers "mitigated" that factor by shielding the suspect from public view by surrounding the suspect; the manner in which the search was conducted—pulling out the waist band of the suspects shorts and underpants, which exposed the suspects genitals to the officer for several seconds—was reasonable under the

---

[8] *Daniels* relied upon the previous decision in *United States v. Dorlouis*, 107 F.3d 248 (4th Cir. 1997), in which "the defendant objected to what he called 'an unconstitutional strip search' conducted incident to arrest when his pants were removed inside of a police van." 323 F. App'x at 208 (quoting *Dorlouis*, 107 F.3d at 256). The Fourth Circuit "concluded that the police officers acted reasonably under the circumstances in attempting to find missing money and that the defendant 'was not subjected to an unnecessarily intrusive search.'" *Daniels*, 323 F. App'x at 208; *see, e.g., United States v. Madriz*, 532 F. App'x 353, 355 (4th Cir. 2013) (affirming denial of a suppression motion challenging a search of the defendant's pants and underwear finding the stop was justified by probable cause, the scope and the manner of the search were reasonable—after officer identified a hard object in the defendant's groin area and unbuckling the defendant's belt and the defendant confirmed item was drugs, the officer checked the space between the defendant's pants and underwear before briefly pulling out the defendant's underwear and discovering and removing the cocaine—and concluding the officer "proceeded cautiously at every step of the search, and at no point did the search threaten [the defendant's] safety").

[9] *Williams* also noted that "a seizure is justified if during a pat-down search of the outer garments, an object 'whose contour or mass' is readily identifiable as contraband." *Williams*, 209 F.3d at 943 (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375-76 (1994)). In the context of "tactile discoveries of contraband" *Dickerson* held that "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." *Id.*

11

circumstances; and that "[t]he scope of the search was confined to the area where the officers had reason to believe the contraband was located").

The search by Boyle at issue in the complaint satisfies the factors in *Wolfish*. Boyle was justified in conducting the search, it was done in a location and manner that provided for privacy,[10] and its scope was limited and very brief. To be sure, the undisputed photographs demonstrate that the officers conducted themselves appropriately and worked professionally and expeditiously in completing the arrest and securing the evidence.

As to the use of excessive force, to establish an Eighth Amendment claim, an inmate must satisfy both an objective component—that the harm inflicted was sufficiently serious—and a subjective component—that the government official acted with a sufficiently culpable state of mind. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Here, other than citing the Eighth Amendment, [Dkt. No. 1 at 5], Simmons complaint made no allegations that any harm was inflicted on him during the search and he has not alleged that either Boyle or Purcell had a sufficiently culpable mind. To the contrary, the undisputed evidence establishes that there is "no evidence that the" officers search of Simmons "was motivated by an intent to punish him." *Bushee v. Angelone*, 7 F. App'x 182, 183, * (4th Cir. 2001) (affirming district court's dismissal of a claim alleging a body cavity search conducted in front of five people violated the plaintiff's Eighth Amendment rights); *see also Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (affirming the grant of summary judgment to the defendant officers despite the plaintiff inmate's allegations that he was verbally harassed, touched, and pressed against by an officer without his consent, finding that "the sexual abuse [plaintiff] claims to have experienced was not serious enough to constitute

---

[10] While the search occurred in public, at the rear of the Cadillac, each officer shielded public view of the search by the positioning of their bodies on either side of Simmons, it was dark, there were no civilians or traffic in the area at the time of the search, and there were no streetlights or sidewalks.

cruel and unusual punishment" and noting the plaintiff did not allege he "experienced any pain or injury as a result of the physical contact" or that "the defendants used force 'maliciously and sadistically to cause harm'"). Further, the officers had a legitimate government purpose in conducting the search that resulted in the discovery and recovery of the drugs, which were evidence of a crime.

Because the evidence establishes that the defendants did not violate Simmons' Fourth or Eight Amendment rights, the Court need not reach the remainder of the defendants' arguments.

## IV. Conclusion

For the foregoing reasons, defendants' motions for summary judgment [Dkt. Nos. 36, 38] must be granted. An appropriate order will issue alongside this memorandum opinion.

Entered this 7th day of July 2023.

Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge